ANNA LEVY, Plaintiff, *v.* JOSEPH COHEN and Others, Defendants.

Supreme Court, Queens County, September 6, 1933.

*Isidor Stroll*, for the plaintiff.

*Herman Silver*, for the defendants.

BONYNGE, J. This motion for summary judgment presents the law in one of its least engaging aspects. The plaintiff sues to foreclose a consolidated mortgage and the defendants plead usury. The voluminous motion papers offer a veritable carnival of double dealing and false swearing. Out of the welter of accusations and denials the following facts appear:

In March, 1928, the defendant Cohen, being the owner of property at Rockaway Beach whereon he conducted a butcher shop, applied to the plaintiff for a second mortgage loan. The negotia-

tions ended in the making of a mortgage for $6,000 to one Lieberman, the penniless brother-in-law of Cohen. Lieberman immediately assigned the mortgage to plaintiff and Cohen executed an estoppel certificate. Any one with wit enough to feed crumbs to a sparrow would understand the probable reason for this circumlocution. Cohen asserts, and the plaintiff denies, that out of the $6,000 the sum of $1,000 was repaid to the latter in cash as a bonus.

In May, 1929, Cohen applied to plaintiff for an additional loan of $3,000 to be secured by a third mortgage on the same property. The identical procedure was repeated, except that in this instance the dummy through whom the mortgage was cleared to plaintiff was one Carrie Goldberg, the sister-in-law of plaintiff. There is like assertion and denial that the inducement to the lender was a cash bonus of $500.

In November, 1931, Cohen was in default in the payment of interest and installments and sought further indulgence of plaintiff. Thereupon a fourth mortgage for $500 was made in favor of the plaintiff, and simultaneously an agreement was executed consolidating all three mortgages and extending the time of payment thereof. The plaintiff asserts that she advanced the sum of $500 in cash to Cohen when the last-mentioned mortgage was delivered, and Cohen avers that he received not a cent.

This case is merely an aggravated illustration of the pernicious effects of a law which squares with neither the conscience nor the needs of the day. If Cohen had been the fortunate possessor of Liberty bonds or other liquid collateral to the amount of $5,000 or more, he could have gone to his bank or to Wall Street and borrowed $5,000 under an agreement to pay twenty per cent interest, and the transaction would have received the blessing of the high priests of finance and good morals. (General Business Law, § 379.) Or again, if he had chanced to hold title to his property in a vest pocket corporation, an equal return to the lender would have been devoid of venality. (Id. § 374.) But because the security he had to offer was less liquid and infinitely less desirable, the law places a badge of infamy upon the lender who has accommodated him. Money always has and probably always will command its own price, both in Wall Street and in Rockaway Beach, and legislative attempts to repeal an economic law of such antiquity are reminiscent of past fulminations against movements of the sun and the tides.

In the present instance the law has corrupted both parties to the transaction, and in the end will enmesh the court. In all human probability Mrs. Levy did not lend her money on second, third and fourth mortgages for a bare six per cent return. If the court

should find that she did, its prestige would be weakened by its credulity. On the other hand, if a judgment is ultimately pronounced in favor of the defendants, the court will be stamped in the minds of Cohen and those who come after him as not unfriendly to chicanery and welshing. Pitch of such a hue contaminates all who come in contact with it.

The answer presents triable issues and the motion for summary judgment must be denied, with ten dollars costs.